**EXHIBIT A**

**COPY OF COMPLAINT**

Richard P. Norton
Robert A. Rich
HUNTON & WILLIAMS LLP
200 Park Avenue, 53rd Floor
New York, New York 10166-0136
Telephone:  (212) 309-1000

*Attorneys For Plaintiff Comerica Bank*

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N Y

★   FEB 2 3 ...   ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

COMERICA BANK,

    Plaintiff,

v.

DENNIS SCIALPI,

    Defendant.

**COMPLAINT**

KORMAN, J.

GOLD, M.J.

Plaintiff Comerica Bank ("Plaintiff" or "Comerica"), by its undersigned attorneys, as and for its complaint against defendant Dennis Scialpi ("Scialpi" or "Defendant") respectfully alleges as follows:

### NATURE OF ACTION

1. In this action, Comerica seeks judgment against the Defendant for monies due and owing Comerica under a personal guaranty.

### THE PARTIES

2. Comerica is a Texas banking association, successor in interest by merger to Comerica Bank, a Michigan banking corporation, with its principal place of business located in Dallas, Texas.

3. Defendant Dennis Scialpi is an individual who, upon information and belief, resides in the city of New York in the State of New York at 35 Julieann Court, Staten Island, New York 10304.

## JURISDICTION AND VENUE

4.      The Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states.  The amount in controversy exceeds $75,000, exclusive of interest and costs.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(a).

## FACTUAL ALLEGATIONS

### I.      The Lending Relationship Between Comerica And The Shoreline Companies

#### A.      The Loan Agreement

5.      On or about June 17, 2004, borrowers Shoreline Merge, Inc., successor in interest by merger with USA United Holdings, Inc. ("Shoreline Merge"), Shoreline Buses, Inc., f/k/a United Tom Tom Transportation, Inc. ("Shoreline Buses"), Shoreline Bus Express, Inc., f/k/a USA United Bus Express, Inc. ("Shoreline Express"), Shoreline Pupil Transit, Inc., f/k/a USA United Transit, Inc. ("Shoreline Pupil"), Shoreline Fleet, Inc. f/k/a USA United Fleet, Inc. ("Shoreline Fleet"), and United Fleet, Inc. ("United Fleet") executed a loan agreement (the "2004 Loan Agreement") with Comerica pursuant to which Comerica agreed to lend money to the borrowers party thereto.

6.      On or about October 30, 2007, Shoreline Merge, Shoreline Buses, Shoreline Express, Shoreline Pupil, Shoreline Fleet, and United Fleet executed that certain Amended and Restated Loan Agreement with Comerica (as amended, the "Amended Loan Agreement").

7.      The Amended Loan Agreement amended and restated the 2004 Loan Agreement in its entirety.

8.      Pursuant to an Assumption Agreement (the "Assumption Agreement") dated April 21, 2010, Shoreline Merge assumed all of its predecessor USA United Holdings, Inc.'s obligations to Comerica under the Amended Loan Agreement and all related documents.

9.      On April 21, 2010, Shoreline Transit, Inc. ("Shoreline Transit" and together with Shoreline Merge, Shoreline Pupil, Shoreline Buses, Shoreline Express, United Fleet and

Shoreline Fleet, the "Borrowers") executed a Joinder Agreement (the "Joinder Agreement") whereby it became a party to the Amended Loan Agreement as if it was an original signatory thereto.

10.     Pursuant to certain Modifications to Loan Documents (collectively, the "Modifications"), dated April 21, 2010, Comerica and borrowers Shoreline Buses, Shoreline Express, Shoreline Pupil, and Shoreline Fleet agreed that the names on the Amended Loan Agreement and all related documents would be changed to reflect the name changes to those entities.

**B.     The Notes**

11.     On or about June 17, 2004, in connection with the 2004 Loan Agreement, Shoreline Merge, Shoreline Buses, Shoreline Express, Shoreline Pupil, United Fleet and Shoreline Fleet each executed a certain term promissory note in favor of Comerica in the original principal amount of $10,000,000.00 (the "2004 Term Note").

12.     The 2004 Term Note was later made subject to the Amended Loan Agreement.

13.     On or about April 21, 2010, in connection with the Amended Loan Agreement, each borrower executed a demand note in favor of Comerica in the original principal amount of $3,000,000.00 (the "Master Revolving Note").

14.     On or about April 21, 2010, in connection with the Amended Loan Agreement, each borrower executed a promissory note in favor of Comerica in the original principal amount of $1,050,000.00 ("Installment Note One").

15.     On or about April 21, 2010, in connection with the Amended Loan Agreement, each borrower executed a promissory note in favor of Comerica in the original principal amount of $4,109,237.05 ("Installment Note Two" and together with the 2004 Term Note, the Master Revolving Note and Installment Note One, the "Notes").

3

C.      **The Security Agreements**

16.     To secure the repayment of the loans made by Comerica under the Amended Loan Agreement and the Notes, each borrower executed a security agreement in favor of Comerica (collectively, the "Security Agreements" and together with the Amended Loan Agreement, the Assumption Agreement, the Joinder Agreement, the Modifications, the Notes, and all related documents or amendments thereto, the "Loan Documents").

17.     Each Security Agreement grants Comerica a first priority security interest in, and lien upon, substantially all assets of each respective Borrower, including, but not limited to, all accounts, general intangibles, inventory, equipment, fixtures, software, goods, money, deposits, and all products and proceeds of the foregoing as more fully set forth in the Security Agreements (the "Collateral").

18.     Comerica duly perfected its security interest in the Collateral by filing Uniform Commercial Code (UCC) financing statements with the appropriate authorities.

II.     **The Guaranty Executed By The Defendant**

19.     On or about April 21, 2010, Defendant Scialpi executed a guaranty (the "Guaranty") "unconditionally and absolutely" guaranteeing payment to Comerica of all existing and future indebtedness of each of the Borrowers. A true and correct copy of the Guaranty is attached hereto as **Exhibit A**.

III.    **The Borrowers' Business And Events Of Default**

20.     The Borrowers were primarily in the business of operating school bus routes under contracts with the Board of Education of the City School District of the City of New York.

21.     Defendant Scialpi was the President and Secretary of the Borrowers.

22.     Prior to and continuing into 2011, the Borrowers were in default to Comerica under the Loan Documents.

23.     Comerica sent several letters to the Borrowers and the Defendant in 2010 and 2011 noting various defaults and requesting information regarding the Borrowers' business and Comerica's collateral.

24.     By letter dated April 20, 2011 (the "Default Notice"), Comerica informed the Borrowers and Defendant of various defaults under the Loan Documents, including the failure to make payments when due.  A true and correct copy of the Default Notice is attached hereto as **Exhibit B**.

25.     On or about May 17, 2011, Comerica sent a letter (the "Acceleration Notice") to the Borrowers and Defendant demanding and accelerating payment under the Loan Documents and the Guaranty.  A true and correct copy of the Acceleration Notice to is attached hereto as **Exhibit C.**

26.     As of June 23, 2011, the Borrowers and Defendant owed Comerica the total amount of $10,926,375.12 for principal and interest (exclusive of costs and fees) under the Loan Documents and the Guaranty (the "Outstanding Indebtedness").

27.     On or about July 6, 2011, the Borrowers filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Cases").

28.     The Bankruptcy Cases were subsequently converted to chapter 7 cases on July 29, 2011.

## COUNT I
## BREACH OF CONTRACT AGAINST DEFENDANT

29.     Comerica repeats and re-alleges paragraphs 1 through 28 above as if fully set forth herein.

30.     Defendant Scialpi personally guaranteed all obligations of the Borrowers under the Loan Documents.

31.     The Guaranty obligates Scialpa to pay Comerica upon the Borrowers' breach and default under the Loan Documents.

32.     The Borrowers breached and are in default under the Loan Documents.

33.     Scialpi failed to pay the Outstanding Indebtedness despite demand by Comerica under the Guaranty.

34.     By failing to make payment of the Outstanding Indebtedness, Scialpi breached the Guaranty.

35.     By reason of the foregoing, Comerica is entitled to recover an amount no less than the Outstanding Indebtedness from Scialpi, as well as interest thereon.

WHEREFORE, Comerica demands judgment against the Defendant as follows:

(a)     judgment be entered in favor of Comerica against the Defendant;

(b)     Comerica recover from Defendant (i) an amount for all damages suffered as a result of Defendant's breach of the Guaranty; (ii) accrued and unpaid interest through the date of judgment; (iii) additional unpaid charges or fees other than attorney's fees through the date of judgment; and (iv) attorney's fees as provided in the Guaranty;

(c)     for such other and further relief as this Court deems just and proper.

Dated:  February 23, 2011
        New York, New York

Respectfully submitted,

HUNTON & WILLIAMS LLP

By: _____
        Richard P. Norton
        Robert A. Rich
        200 Park Avenue
        New York, New York 10166
        Telephone:  (212) 309-1000
        Facsimile:  (212) 309-1100

        Attorneys For Plaintiff Comerica Bank

# _EXHIBIT A_

*17*

**ComericA**      **Guaranty**

As of April 21, 2010, the undersigned, for value received, unconditionally and absolutely guarantee(s) to Comerica Bank ("Bank"), payment when due, whether by stated maturity, demand, acceleration or otherwise, of all existing and future indebtedness ("Indebtedness") to the Bank of Shoreline Merge, Inc., Shoreline Transit, Inc., Shoreline Buses, Inc., United Fleet, Inc., Shoreline Bus Express, Inc., Shoreline Fleet, Inc., Shoreline Pupil Transit, Inc. and United Executives, Inc. (individually and collectively, "Borrower"). Indebtedness includes without limit any and all obligations or liabilities of the Borrower to the Bank, whether absolute or contingent, direct or indirect, voluntary or involuntary, liquidated or unliquidated, joint or several, known or unknown; any and all indebtedness, obligations or liabilities for which Borrower would otherwise be liable to the Bank were it not for the invalidity, irregularity or unenforceability of them by reason of any bankruptcy, insolvency or other law or order of any kind, or for any other reason; any and all amendments, modifications, renewals and/or extensions of any of the above; and all costs of collecting Indebtedness, including, without limit, attorney fees. Any reference in this Guaranty to attorney fees shall be deemed a reference to reasonable fees, charges, costs and expenses of both in-house and outside counsel and paralegals, whether or not a suit or action is instituted, and to court costs if a suit or action is instituted, and whether attorney fees or court costs are incurred at the trial court level, on appeal, in a bankruptcy, administrative or probate proceeding or otherwise. All costs shall be payable immediately by the undersigned when incurred by the Bank, without demand, and until paid shall bear interest at the highest per annum rate applicable to any of the Indebtedness, but not in excess of the maximum rate permitted by law.

1.     **LIMITATION:** The total obligation of the undersigned under this Guaranty is **UNLIMITED** unless specifically limited in the Additional Provisions of this Guaranty, and this obligation (whether unlimited or limited to the extent specified in the Additional Provisions) shall include, IN ADDITION TO any limited amount of principal guaranteed, all interest on that limited amount, and all costs incurred by the Bank in collection efforts against the Borrower and/or the undersigned or otherwise incurred by the Bank in any way relating to the Indebtedness, or this Guaranty, including without limit attorney fees. The undersigned agree(s) that (a) this limitation shall not be a limitation on the amount of Borrower's Indebtedness to the Bank; (b) any payments by the undersigned shall not reduce the maximum liability of the undersigned under this Guaranty unless written notice to that effect is actually received by the Bank at, or prior to, the time of the payment; and (c) the liability of the undersigned to the Bank shall at all times be deemed to be the aggregate liability of the undersigned under this Guaranty and any other guaranties previously or subsequently given to the Bank by the undersigned and not expressly revoked, modified or invalidated in writing.

2.     **NATURE OF GUARANTY:** This is a continuing Guaranty of payment and not of collection and remains effective whether the Indebtedness is from time to time reduced and later increased or entirely extinguished and later reincurred. The undersigned deliver(s) this Guaranty based solely on the undersigned's independent investigation of (or decision not to investigate) the financial condition of Borrower and is (are) not relying on any information furnished by the Bank. The undersigned assume(s) full responsibility for obtaining any further information concerning the Borrower's financial condition, the status of the Indebtedness or any other matter which the undersigned may deem necessary or appropriate now or later. The undersigned knowingly accept(s) the full range of risk encompassed in this Guaranty, which risk includes, without limit, the possibility that Borrower may incur Indebtedness to the Bank after the financial condition of the Borrower, or the Borrower's ability to pay debts as they mature, has deteriorated.

3.     **APPLICATION OF PAYMENTS:** The undersigned authorize(s) the Bank, either before or after termination of this Guaranty, without notice to or demand on the undersigned and without affecting the undersigned's liability under this Guaranty, from time to time to: (a) apply any security and direct the order or manner of sale; and (b) apply payments received by the Bank from the Borrower to any indebtedness of the Borrower to the Bank, in such order as the Bank shall determine in its sole discretion, whether or not this indebtedness is covered by this Guaranty, and the undersigned waive(s) any provision of law regarding application of payments which specifies otherwise. The undersigned agree(s) to provide to the Bank copies of the undersigned's financial statements upon request.

4.     **SECURITY:** The undersigned grant(s) to the Bank a security interest in and the right of setoff as to any and all property of the undersigned now or later in the possession of the Bank. The undersigned further assign(s) to the Bank as collateral for the obligations of the undersigned under this Guaranty all claims of any nature that the undersigned now or later has (have) against the Borrower (other than any claim under a deed of trust or mortgage covering California real property) with full right on the part of the Bank, in its own name or in the name of the undersigned, to collect and enforce these claims. The undersigned agree(s) that no security now or later held by

whether in the nature of a security interest, pledge, lien, assignment, setoff, suretyship, guaranty, indemnity, insurance or otherwise, shall affect in any manner the unconditional obligation of the undersigned under this Guaranty, and the Bank, in its sole discretion, without notice to the undersigned, may release, exchange, enforce and otherwise deal with any security without affecting in any manner the unconditional obligation of the undersigned under this Guaranty. The undersigned acknowledge(s) and agree(s) that the Bank has no obligation to acquire or perfect any lien on or security interest in any asset(s), whether realty or personalty, to secure payment of the Indebtedness, and the undersigned is (are) not relying upon any asset(s) in which the Bank has or may have a lien or security interest for payment of the Indebtedness.

5.      **OTHER GUARANTORS:** If any Indebtedness is guaranteed by two or more guarantors, the obligation of the undersigned shall be several and also joint, each with all and also each with any one or more of the others, and may be enforced at the option of the Bank against each severally, any two or more jointly, or some severally and some jointly. The Bank, in its sole discretion, may release any one or more of the guarantors for any consideration which it deems adequate, and may fail or elect not to prove a claim against the estate of any bankrupt, insolvent, incompetent or deceased guarantor; and after that, without notice to any guarantor, the Bank may extend or renew any or all Indebtedness and may permit the Borrower to incur additional Indebtedness, without affecting in any manner the unconditional obligation of the remaining guarantor(s). The undersigned acknowledge(s) that the effectiveness of this Guaranty is not conditioned on any or all of the indebtedness being guaranteed by anyone else.

6.      **TERMINATION:** Any of the undersigned may terminate their obligation under this Guaranty as to future Indebtedness (except as provided below) by (and only by) delivering written notice of termination to an officer of the Bank and receiving from an officer of the Bank written acknowledgment of delivery; provided, however, the termination shall not be effective until the opening of business on the fifth (5th) day ("effective date") following written acknowledgment of delivery. Any termination shall not affect in any way the unconditional obligations of the remaining guarantor(s), whether or not the termination is known to the remaining guarantor(s). Any termination shall not affect in any way the unconditional obligations of the terminating guarantor(s) as to any Indebtedness existing at the effective date of termination or any Indebtedness created after that pursuant to any commitment or agreement of the Bank or pursuant to any Borrower loan with the Bank existing at the effective date of termination (whether advances or readvances by the Bank after the effective date of termination are optional or obligatory), or any modifications, extensions or renewals of any of this Indebtedness, whether in whole or in part, and as to all of this Indebtedness and modifications, extensions or renewals of it, this Guaranty shall continue effective until the same shall have been fully paid. The Bank has no duty to give notice of termination by any guarantor(s) to any remaining guarantor(s). The undersigned shall indemnify the Bank against all claims, damages, costs and expenses, including, without limit, attorney fees, incurred by the Bank in connection with any suit, claim or action against the Bank arising out of any modification or termination of a Borrower loan or any refusal by the Bank to extend additional credit in connection with the termination of this Guaranty.

7.      **REINSTATEMENT:** Notwithstanding any prior revocation, termination, surrender or discharge of this Guaranty (or of any lien, pledge or security interest securing this Guaranty) in whole or in part, the effectiveness of this Guaranty, and of all liens, pledges and security interests securing this Guaranty, shall automatically continue or be reinstated in the event that any payment received or credit given by the Bank in respect of the Indebtedness is returned, disgorged or rescinded under any applicable state or federal law, including, without limitation, laws pertaining to bankruptcy or insolvency, in which case this Guaranty, and all liens, pledges and security interests securing this Guaranty, shall be enforceable against the undersigned as if the returned, disgorged or rescinded payment or credit had not been received or given by the Bank, and whether or not the Bank relied upon this payment or credit or changed its position as a consequence of it. In the event of continuation or reinstatement of this Guaranty and the liens, pledges and security interests securing it, the undersigned agree(s) upon demand by the Bank, to execute and deliver to the Bank those documents which the Bank determines are appropriate to further evidence (in the public records or otherwise) this continuation or reinstatement, although the failure of the undersigned to do so shall not affect in any way the reinstatement or continuation. If the undersigned do(es) not execute and deliver to the Bank upon demand such documents, the Bank and each Bank officer is irrevocably appointed (which appointment is coupled with an interest) the true and lawful attorney of the undersigned (with full power of substitution) to execute and deliver such documents in the name and on behalf of the undersigned.

8.      **WAIVERS:** The undersigned , to the extent not expressly prohibited by applicable law,  waive(s) any right to require the Bank to: (a) proceed against any person or property; (b) give notice of the terms, time and place of any public or private sale of personal property security held from the Borrower or any other person, or otherwise comply with the provisions of Sections  9-611 or 9-621 of the Michigan or other applicable Uniform Commercial

2

Code, as the same may be amended, revised or replaced from time to time; or (c) pursue any other remedy in the Bank's power.  The undersigned waive(s) notice of acceptance of this Guaranty and presentment, demand, protest, notice of protest, dishonor, notice of dishonor, notice of default, notice of intent to accelerate or demand payment of any Indebtedness, any and all other notices to which the undersigned might otherwise be entitled, and diligence in collecting any Indebtedness, and agree(s) that the Bank may, once or any number of times, modify the terms of any Indebtedness, compromise, extend, increase, accelerate, renew or forbear to enforce payment of any or all Indebtedness, or permit the Borrower to incur additional Indebtedness, all without notice to the undersigned and without affecting in any manner the unconditional obligation of the undersigned under this Guaranty.

The undersigned unconditionally and irrevocably waive(s) each and every defense and setoff of any nature which, under principles of guaranty or otherwise, would operate to impair or diminish in any way the obligation of the undersigned under this Guaranty, and acknowledge(s) that each such waiver is by this reference incorporated into each security agreement, collateral assignment, pledge and/or other document from the undersigned now or later securing this Guaranty and/or the Indebtedness, and acknowledge(s) that as of the date of this Guaranty no such defense or setoff exists.

9.    **WAIVER OF SUBROGATION:**  The undersigned waive(s) any and all rights (whether by subrogation, indemnity, reimbursement, or otherwise) to recover from the Borrower any amounts paid by the undersigned pursuant to this Guaranty.

10.   **SALE/ASSIGNMENT:**  The undersigned acknowledge(s) that the Bank has the right to sell, assign, transfer, negotiate, or grant participations in all or any part of the Indebtedness and any related obligations, including, without limit, this Guaranty, without notice to the undersigned and that the Bank may disclose any documents and information which the Bank now has or later acquires relating to the undersigned or to the Borrower in connection with such sale, assignment, transfer, negotiation, or grant.  The undersigned agree(s) that the Bank may provide information relating to this Guaranty or relating to the undersigned to the Bank's parent, affiliates, subsidiaries and service providers.

11.   **GENERAL:**  This Guaranty constitutes the entire agreement of the undersigned and the Bank with respect to the subject matter of this Guaranty.  No waiver, consent, modification or change of the terms of the Guaranty shall bind any of the undersigned or the Bank unless in writing and signed by the waiving party or an authorized officer of the waiving party, and then this waiver, consent, modification or change shall be effective only in the specific instance and for the specific purpose given.  This Guaranty shall inure to the benefit of the Bank and its successors and assigns and shall be binding on the undersigned and the undersigned's heirs, legal representatives, successors and assigns including, without limit, any debtor in possession or trustee in bankruptcy for any of the undersigned.  The undersigned has (have) knowingly and voluntarily entered into this Guaranty in good faith for the purpose of inducing the Bank to extend credit or make other financial accommodations to the Borrower.  If any provision of this Guaranty is unenforceable in whole or in part for any reason, the remaining provisions shall continue to be effective.  THIS GUARANTY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE INTERNAL LAWS OF THE STATE OF MICHIGAN, WITHOUT REGARD TO CONFLICT OF LAWS PRINCIPLES.

12.   **HEADINGS:**  Headings in this Agreement are included for the convenience of reference only and shall not constitute a part of this Agreement for any purpose.

13.   **ADDITIONAL PROVISIONS: None.**

14.   **JURY TRIAL WAIVER:  THE UNDERSIGNED AND BANK ACKNOWLEDGE THAT THE RIGHT TO TRIAL BY JURY IS A CONSTITUTIONAL ONE, BUT THAT IT MAY BE WAIVED.  EACH PARTY, AFTER CONSULTING (OR HAVING HAD THE OPPORTUNITY TO CONSULT) WITH COUNSEL OF THEIR CHOICE, KNOWINGLY AND VOLUNTARILY, AND FOR THEIR MUTUAL BENEFIT WAIVES ANY RIGHT TO TRIAL BY JURY IN THE EVENT OF LITIGATION REGARDING THE PERFORMANCE OR ENFORCEMENT OF, OR IN ANY WAY RELATED TO, THIS GUARANTY OR THE INDEBTEDNESS.**

3

Detroit_976409_2

IN WITNESS WHEREOF, Guarantor(s) has (have) signed and delivered this Guaranty the day and year first written above.

GUARANTOR(S): _____Dennis Scialpi_____
GUARANTOR NAME TYPED/PRINTED

WITNESSES:

_____
SIGNATURE OF

_____
SIGNATURE OF DENNIS SCIALPI

GUARANTOR'S ADDRESS:

35 William Ct
STREET ADDRESS

Staten Island   NY   10314
CITY         STATE      ZIP CODE

STATE OF ~~NEW YORK~~ New Jersey   )
                                    ) SS
COUNTY OF Union                     )

The above instrument was acknowledged before me this __26__ day of ~~April,~~ MAY 2010 ~~2010~~ by Dennis Scialpi.

_____
Notary Public
Union County, ~~New York~~ New Jersey
Acting in Union County, ~~New York~~ New JR
My commission expires: 4/16/2014

WILLIAM J. MORAN
NOTARY PUBLIC
STATE OF NEW JERSEY
MY COMMISSION EXPIRES APRIL 16, 2014

4

Detroit_976409_2

## _EXHIBIT B_

Comerica Bank

Comerica Bank
April 20, 2011

P.O. Box 75000
Detroit, Michigan 48275

Shoreline Merge, Inc.
Shoreline Pupil Transit, Inc.
Shoreline Buses, Inc.
Shoreline Bus Express, Inc.
United Fleet, Inc.
Shoreline Fleet, Inc.
2859 West 37th Street
Brooklyn, New York 11224

Re:   FINANCING   ARRANGEMENTS   AMONG   COMERICA   BANK   ("BANK"),
SHORELINE MERGE, INC. ("MERGE"), SHORELINE PUPIL TRANSIT, INC.
("PUPIL"), SHORELINE BUSES, INC. ("BUSES"), SHORELINE BUS EXPRESS,
INC. ("EXPRESS"), UNITED FLEET, INC. ("UNITED FLEET"), SHORELINE
TRANSIT, INC. ("SHORELINE TRANSIT," TOGETHER WITH MERGE, PUPIL,
BUSES, EXPRESS, AND UNITED FLEET, "BORROWERS"), AND DENNIS
SCIALPI ("GUARANTOR")

Ladies and Gentlemen:

Thank you for the meeting with us on April 7, 2011. This letter is response to the email sent by
Bill Moran after our meeting that day.

Please refer to any and all documents, instruments, and agreements executed in connection with
the financing arrangements from Bank to Borrowers (collectively, the "Loan Documents"). All
amounts due from Borrowers to Bank, whether now or in the future, contingent, fixed, primary
and/or secondary, including, but not limited to, principal, interest, inside and outside counsel
fees, audit fees, costs, expenses and any and all other charges provided for in the Loan
Documents are identified collectively as the "Liabilities." All capitalized terms used but not
defined in this letter have the meanings set forth in the Loan Documents.

With respect to the timing of the processing of the closing documents dated April 21, 2010 and
the corresponding due dates of certain payments, there have been numerous discussions, emails
and letters (dated May 25, 2010, September 30, 2010, and November 19, 2010) addressing those
issues. In summary: (a) Borrowers did not timely provide to Bank all of the closing documents,
including the guaranty of Dennis Scialpi, various authority documents, financial reporting, and
covenant compliance information; (b) Borrowers amended their names or were merged into
another company without timely notice to Bank, which caused delays and additional
documentation, (c) Borrowers failed to take actions required by Bank to perfect Bank's liens on
certain assets of Borrowers; (d) Borrowers failed to maintain at all times their primary operating
bank accounts with Bank as required under Section 7.14 of the Amended and Restated Credit
Agreement dated October 30, 2007, as amended ("Credit Agreement"); and (e) Borrowers were
in default and remain in default under the Loan Documents.

In addition, with respect to the billing statements delivered to Borrowers since April 2010, the Master Revolving Note, the Installment Note in the original principal amount of $4,109,237.05 ("Installment Note 1"), and the Installment Note in the original principal amount of $1,050,000 ("Installment Note 2") are dated April 21, 2010 and were processed as of that date. Installment Note 1 consolidated 11 term notes made by Borrowers to Bank and Installment Note 2 amortizes a portion of the previous revolving note made by Borrowers to Bank. Due to the change in the credit structure and timing of the effective date of the notes as compared to the actual date the notes were processed, interim bills were issued prior to the completion of processing and then revised bills were sent to Borrowers after processing was completed.

Without limitation, Borrowers are in default under the Loan Documents because: (1) Borrowers failed to make payments due under the Loan Documents, including but not limited to the April 2011 payments on the Liabilities; (2) there are tax liens filed against USA United Holdings, Inc., and Shoreline Fleet, (3) there are judgments against Borrowers and Guarantor in excess of $50,000 in aggregate, (4) Borrowers failed to maintain at all times their primary operating bank accounts with Bank as required under Section 7.14 of the Credit Agreement; (4) Borrowers have failed to take actions required by Bank to perfect Bank's liens on certain assets of Borrowers; and (5) Borrowers failed to provide Bank with financial reporting and covenant compliance information as required by the Credit Agreement. Other defaults may exist.

In addition, Bank has the following questions and requests the following information and documentation:

- What does the Security and Investment account on the balance sheet dated December 31, 2010 represent? Provide Merrill Lynch Securities and Investment Account information for any account owned by any Borrower or Guarantor, including current balances and the holdings in such accounts.

- Provide detail, in form satisfactory to Bank, of the indebtedness included in Notes Payable on the balance sheet dated December 31, 2010, including for all amounts other than those due to Bank, the amount due, the required monthly payments, and all collateral for such indebtedness.

- Provide properly executed documents by Trinity Account Management, Inc., including the guaranty, security agreement, incumbency certificate, borrowing resolutions, a copy of its Articles of Incorporation, and a copy of its bylaws.

- Provide the names and addresses of the landlords for the locations where Borrowers' buses are stored.

- Provide an explanation for all tax liens against Borrowers and the plan of repayment of such tax liens, including the tax liens filed against USA United Holdings, Inc. in Kings County, New York with UCC File No.'s E0255454880010, E0255454880024, S0000012971385, and S0000012997651 and the tax liens filed against USA United Fleet, Inc. in Kings County, New York with UCC File No. 002757138-01.

- Provide a copy of each of Borrowers' bylaws.

2

- Provide documentation, in form and substance acceptable to Bank, including the signature page to such document, that all of the Borrowers are parties to the Extension and Sixteenth Amendment Agreement of Special Education Pupil Transportation Requirements Contracts.

- Provide documentation, in form and substance acceptable to Bank, that Bank is named as the first priority secured party on all vehicles owned by Borrowers (see attached spreadsheet).

- Provide copies of Borrowers' invoices to the New York Department of Education with respect to the accounts receivable included in the most recent borrowing bank certificate provided to Bank.

- Provide Borrowers' financial projections through December 31, 2011, in form acceptable to Bank.

- Provide an accounts payable aging for each Borrower as of March 31, 2011.

- Provide bank account statements for 2011 for each Borrower and Guarantor. Include a written explanation, in form acceptable to Bank, of the payments to and garnishments by Division 1181, ATU in December 2010 through January 2011.

- Provide confirmation, in form acceptable to Bank, that accounts receivable of Tom Tom Escorts are not included in the Advance Formula (as defined in the Advance Formula Agreement dated April 21, 2010).

- Provide properly executed documents by Tom Tom Escorts, including the guaranty, security agreement, incumbency certificate, borrowing resolutions, a copy of its Articles of Incorporation, and a copy of its bylaws.

Bank may, in its sole discretion, continue to advance to Borrowers under the Master Revolving Note. Any past or future advance made by Bank shall not constitute a waiver of any default or Bank's agreement to make further advances or to forbear from exercising remedies.

Bank reserves all of its rights and remedies under the Loan Documents and applicable law, any or all of which rights and remedies may be exercised by Bank without further notice including, but not limited to, not making any further advances and invoking the default rate of interest as of the day of the first default. Bank's failure to exercise any such right or remedy shall not be construed as a waiver or modification of those rights or as an offer of forbearance. Nothing in this letter shall constitute a waiver of any default, an offer of forbearance, or an agreement to make any future advances. Please contact me at your earliest convenience to arrange for the payment in full of all of the Liabilities.

Thank you again for meeting with us. Please contact me to discuss a time we can meet to discuss any open issues.

3

Very truly yours,

E. Lee Jones
Comerica Bank
Vice President
Special Assets Group
P.O. Box 75000
Detroit, Michigan 48275-3205
(313) 222-8709

cc:     Robert J. Diehl, Jr.
        Gregory M. Ryan
        Dennis Scialpi

4

Detroit_1083971_6

# *EXHIBIT C*



**Comerica Bank**

May 17, 2011

Shoreline Merge, Inc.
Shoreline Pupil Transit, Inc.
Shoreline Buses, Inc.
Shoreline Bus Express, Inc.
United Fleet, Inc.
Shoreline Fleet, Inc.
2859 West 37th Street
Brooklyn, New York 11224

Re: FINANCING ARRANGEMENTS AMONG COMERICA BANK ("BANK"), SHORELINE MERGE, INC. ("MERGE"), SHORELINE PUPIL TRANSIT, INC. ("PUPIL"), SHORELINE BUSES, INC. ("BUSES"), SHORELINE BUS EXPRESS, INC. ("EXPRESS"), UNITED FLEET, INC. ("UNITED FLEET"), SHORELINE TRANSIT, INC. ("SHORELINE TRANSIT," TOGETHER WITH MERGE, PUPIL, BUSES, EXPRESS, AND UNITED FLEET, "BORROWERS"), AND DENNIS SCIALPI ("GUARANTOR")

Ladies and Gentlemen:

Please refer to any and all documents, instruments, and agreements executed in connection with the financing arrangements from Bank to Borrowers (collectively, the "Loan Documents"). All capitalized terms used but not defined in this letter have the meanings set forth in the Loan Documents, including the letter from Bank to Borrowers dated April 20, 2011 ("April 20, 2011 Letter").

As of May 16, 2011 the Liabilities include, but are not limited to, the following:

| Loans (original note amount and date) | Principal | Interest |
|---|---|---|
| Master Revolving Note ($3,000,000; 4/21/10) | $2,999,665.85 | $23,247.41 |
| Installment Note ($1,050,000; 4/21/10) | $825,000.00 | $7,180.56 |
| Term Note ("Term Note 1") ($4,109,237.05; 4/21/10) | $2,759,237.05 | $24,218.44 |
| Term Note ("Term Note 2") ($10,000,000.00; 6/17/04) | $4,110,146.29 | $33,778.79 |
| Total | $10,694,049.19 | $88,425.20 |

The amounts referenced above are exclusive of interest accruing after May 16, 2011, costs and expenses (including, but not limited to, inside and outside counsel fees), which amounts shall be immediately due and payable to Bank upon demand.

In the letter dated April 21, 2010 ("April 21, 2010 Letter"), Borrowers represented and agreed that United Executives, Inc. ("UE") had been dissolved by Proclamation/Annulment effective January 27, 2010, UE had no assets, and if UE owned any assets or conducted any business it would constitute an Event of Default under the Loan Documents.

Without limitation, Borrowers are in default under the Loan Documents due to: (a) the reasons identified in the April 20, 2011 Letter, including failure to make the April 2011 payments on the Liabilities; (b) failure to make the May 2011 payments on the Liabilities; and (c) UE's account no. 1852369295 ("UE Account") at Bank has a balance of $39,062.75. Other defaults may exist.

For the reasons outlined above, Bank accelerates the Installment Note, Term Note 1, and Term Note 2 and demands payment in full of all of the Liabilities. By copy of this letter demand for payment of the Liabilities is also made of Guarantor.

From the date of this letter, interest shall accrue on the Master Revolving Note, Installment Note, Term Note 1, and Term Note 2 at their respective default rate under the Loan Documents.

Bank reserves all of its rights and remedies under the Loan Documents and applicable law, any or all of which rights and remedies may be exercised by Bank without further notice. Bank's failure to exercise any such right or remedy shall not be construed as a waiver or modification of those rights or as an offer of forbearance. Nothing in this letter shall constitute a waiver of any default, an offer of forbearance, or an agreement to make any future advances.

Please transfer the funds in the UE Account to an account at Bank in the name of one of the Borrowers and contact me upon your receipt of this letter to arrange for the payment in full of all of the Liabilities.

Very truly yours,

E. Lee Jones
Comerica Bank
Vice President
Special Assets Group
P.O. Box 75000
Detroit, Michigan 48275-3205
(313) 222-8709

cc:    Robert J. Diehl, Jr.
       Gregory M. Ryan
       Dennis Scialpi

2

Detroit_1092542_3